**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**February 2, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ZYAIRE WILLIAMS, a/k/a Zyaire Echean
Williams,

    Defendant - Appellant.

No. 22-1072
(D.C. No. 1:20-CR-00278-RMR-1)
(D. Colo.)

_____

**ORDER AND JUDGMENT***
_____

Before **PHILLIPS**, **MURPHY**, and **EID**, Circuit Judges.
_____

After examining the briefs and appellate record, this panel unanimously

concluded oral argument would not materially assist in the determination of this

appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case was therefore

ordered to be submitted without oral argument on January 11, 2023.

On July 1, 2020, Zyaire Williams was involved in a gunfight outside of a

liquor store in Denver, Colorado. The altercation began as a dispute between rival

gang members inside the store, which spilled out onto the sidewalk. Security camera

footage captured four individuals, including Williams and two associates—Daniel

---

* This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Epperson and Lougary Eddington—firing guns outside the store. Epperson was shot and collapsed during the exchange and the opposing gang member, Roy Fernandez, fled after being shot in the arm. Williams unsuccessfully attempted to move Epperson's body into his vehicle after the fight, but absconded when it became apparent police were called to the scene. Upon arrival, first responders rushed Epperson to the hospital, where he was pronounced dead.

Shortly after the incident, police secured the crime scene and investigators began processing evidence. Officers discovered several clusters of shell casings, including seven SIG 9mm Luger casings located where security footage showed Williams discharging his weapon during the fight. Additionally, one responding officer was a member of the Denver Police Department's Special Operations Response Team, which specializes in surveilling high-crime areas. This officer examined footage from the store's security cameras and recognized Williams, who has prominent face tattoos, from previous patrol encounters.

Williams was charged with possession of ammunition as a previously convicted felon in violation of 18 U.S.C. § 922(g)(1). At trial, Williams argued the crime scene was not properly secured and he could not be convincingly tied to the shell casings found by police investigators. Among evidence used by prosecutors was two body camera videos, noted as Exhibits 38 and 39. The body camera footage illustrated the process of securing the perimeter of the crime scene, assessing bullet damage, and discovering discarded ammunition. At trial, defense counsel objected to the audio portion of the footage, arguing the tapes contained improper hearsay. The

district court agreed the exhibits contained some hearsay, but also determined portions of the audio were unfairly prejudicial. The district court determined all but twenty-four seconds of body camera footage from Exhibit 39 should be muted when presented to the jury. These remaining clips expressly covered the identification of casings which acted as the basis for Williams's criminal charge. In addition to minor ambient noises, the complete audio presented to the jury contained the following officer statements:

> 1:56 – 2:10: "Hey, we got a bullet hole here in this car."
> 3:31 – 3:35: "We got bullet holes in these two cars over here."
> 4:16 – 4:22: "Oh, there's one right here."

The jury returned a verdict against Williams, and he received a sentence of 87 months' incarceration. On appeal, Williams requests this court determine the admission of the audio in Exhibit 39 is unfairly prejudicial under Fed. R. Evid. 403 and violative of his access to a fair trial. This court concludes the three short audio clips were aptly curated to highlight the most probative portions of the evidence without prejudicing Williams.

Admission of evidence at trial is reviewed for abuse of discretion. *United States v. Collins*, 575 F.3d 1069, 1073 (10th Cir. 2009). Abuse of discretion occurs if a judgment is "arbitrary, capricious, whimsical, or manifestly unreasonable." *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 968 (10th Cir. 2001). Federal Rule of Evidence 403 allows trial courts to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting

cumulative evidence." *See also United States v. Armajo*, 38 F.4th 80, 84 (10th Cir. 2022). District courts' Rule 403 determinations are typically afforded great deference "because the considerations arising under Rule 403 are susceptible only to case-by-case determinations, requiring examination of the surrounding facts, circumstances, and issues." *United States v. Lloyd*, 807 F.3d 1128, 1152 (9th Cir. 2015) (internal quotation omitted).

Here, the limited audio played for the jury does not present any of the dangers contemplated by Rule 403. Williams argues the nature of the audio and the police officers' statements connoted a heightened state of alarm that biased the jury. The officers captured by the clips, however, speak in a calm manner illustrative of a standard crime scene investigation. Although inclusion of the audio was not favorable to Williams's argument at trial, that alone cannot support a finding of unfair prejudice. *United States v. Curtis*, 344 F.3d 1057, 1067 (10th Cir. 2003). Rather, unfair prejudice requires "the evidence must have an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Caraway*, 534 F.3d 1290, 1301 (10th Cir. 2008) (internal quotation omitted). No portion of the audio used here carries an emotional charge that could have induced an improper decision from the jury. Nor was the evidence needlessly cumulative. The audio uniquely added to the value of the footage because it allowed the jury to easily follow the sequence of events shown. Finally, Williams offers no support for his suggestion that absent any violation of the Federal Rules of Evidence, the audio format itself is improper.

4

To the extent the audio presents any indicia of prejudice or needless cumulation, such threats do not "substantially outweigh" the highly probative nature of the evidence. The twenty-four seconds of audio directly implicated the discovery of shell casings which acted as the foundation of Williams's conviction. Further, the district court meticulously tailored the evidence to its most relevant portions by muting approximately 97% of the available body camera audio. The precise curation of evidence to minimize prejudicial effect helps demonstrate the district court thoroughly and faithfully executed its Rule 403 balancing duties. *United States v. Isabella*, 918 F.3d 816, 842 (10th Cir. 2019). The district court did not abuse its discretion by carefully allowing only the most highly probative audio portions of the body camera footage and muting any other footage that may have been remotely prejudicial.

The judgment of the United States District Court for the District of Colorado is hereby AFFIRMED.

Entered for the Court


Michael R. Murphy
Circuit Judge

5